## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JERMAINE LANDRY** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 05-5523** |
| **BURL CAIN, WARDEN** | * | **SECTION: "S"(6)** |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.

Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2). Accordingly, it is recommended that the petition for habeas corpus relief filed on behalf of Jermaine Landry be **DENIED WITH PREJUDICE.**

## I.  PROCEDURAL HISTORY

On November 16, 2000, petitioner, Jermaine Landry, a prisoner incarcerated in the Louisiana State Penitentiary, Angola, Louisiana, was found guilty, following trial by jury,

of armed robbery. On December 5, 2000, Landry was adjudicated to be a third felony offender and was sentenced to life imprisonment.

On September 26, 2001, pursuant to his appeal, the Louisiana Fourth Circuit Court of Appeal affirmed Landry's conviction and life sentence. *See State v. Landry*, 798 So.2d 338 (TABLE, No. 2001-KA-0535) (La. App. 4 Cir. 9/26/01).[1] On October 25, 2002, the Louisiana Supreme Court denied Landry's writ application. *See State v. Landry*, 827 So.2d 1173 (La. 2002).

Following the completion of his direct appeal proceedings, Landry sought post-conviction relief. His efforts in this regard culminated on May 6, 2005, when the Louisiana Supreme Court denied his writ application. *See State ex rel. Landry v. State*, 901 So.2d 1083 (La. 2005).

Landry filed the instant action for federal habeas corpus relief on August 5, 2005, arguing: 1) That he received ineffective assistance of counsel by virtue of counsel's failure to object to leading questions and hearsay testimony and failure to effectively cross-examine witnesses; 2) that his sentence was unconstitutionally excessive; 3) that his constitutional rights were violated when improper reference was made to his criminal history and counsel failed to object to this reference; 4) that there was insufficient evidence to support his adjudication as a third felony offender and counsel failed to object to this lack of evidence;

---

[1] Copies of the Louisiana Fourth Circuit's unpublished opinion are contained in the State rec., vol. 1 of 1 and supplemental vol. 2.

2

and, 5) that counsel was ineffective in that he utilized "standardized forms" in preparing pre-trial motions on Landry's behalf.[2]  The State, in its response (rec. doc. 11, p. 2), concedes that the instant habeas application is timely and that Landry has exhausted his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).  Accordingly, this court shall review the pertinent facts, then proceed to address the merits of Landry's claims.

## II.  FACTS[3]

New Orleans Police Detective Gregory Powell testified that on May 8, 2000, he investigated an armed robbery which involved the taking of a vehicle parked outside of a Church's Chicken fast food outlet located near the intersection of Dowman and Morrison Roads in eastern New Orleans.  Dana Jackson, the victim, reported that an armed male forced her out of her rental car at gunpoint.  Ms. Jackson testified that the perpetrator pointed a silver-colored gun at her and told her "to get the fuck out" of the car.[4]  Shortly after the

---

[2]While Landry, in his supporting memorandum ( rec. doc. 1), enumerates seven claims,  claims three and four, along with claims five and six, concern the same subject matter.  Accordingly, in the instant report and recommendation, Landry's enumerated claims three and four have been consolidated into claim 3), and Landry's enumerated claims five and six have been consolidated into claim 4).

[3]The facts are taken from the state appellate court's opinion on direct appeal, *State v. Landry*, 798 So.2d 338 (TABLE, No. 2000-KA-0535) (La. App. 4 Cir. 9/26/01), copies of which are contained in the State rec., vol. 1 of 1 and supplemental vol. 2, along with this court's review of the trial transcript.

[4]*See* State rec., vol. 1 of 1, trial transcript at p. 37, lines 11-32.

incident, Detective Powell presented Jackson with a photographic lineup.  Jackson was able

to identify Landry's photograph from this lineup.  Jackson also identified Landry at trial as

the man who had pointed a gun at her and forced her out of her rental vehicle.[5]

Zeisha Thomas, who was in the vehicle with Jackson when the incident at issue

occurred, corroborated Jackson's testimony to the effect that Landry, pointing a gun at

Jackson, told them to "get the 'F' out of the car."[6]  Thomas testified that she recognized

Landry as he was her sister-in-law's boyfriend.[7]  Thomas, like Jackson, identified Landry as

the perpetrator in a photographic lineup and at trial.[8]  Further, Thomas got a look at the gun

Landry pointed at Jackson, describing it as chrome-plated and "shiny".[9]

Thomas testified that after reporting the incident to police, she and Jackson decided

to go look for the stolen vehicle.  They spotted the car being driven by Landry in the St.

Thomas Housing Project.[10]  Thomas stated that she and Jackson got a good look at Landry

in the stolen vehicle, explaining that he drove the vehicle to a grocery store, then proceeded

---

[5]*See* State rec., vol. 1 of 1, trial transcript at pp. 39 and 40.

[6]*See* State rec., vol. 1 of 1, trial transcript at p. 53, lines 19-26.

[7]*See* State rec., vol. 1 of 1, trial transcript at p. 53, lines 27-32; p. 54, lines 1-2.

[8]*See* State rec., vol. 1 of 1, trial transcript at pp. 54-55.

[9]*See* State rec., vol. 1 of 1, trial transcript at p. 55, lines 23-27.

[10]*See* State rec., vol. 1 of 1, trial transcript at p. 56.

to exit the vehicle and enter the store.[11]  It was at this point that Thomas and Jackson attempted to report Landry's whereabouts to police, but as they were on the phone, "the police cell phone went dead."[12]

As part of his investigation, Detective Powell learned that Landry was at his girlfriend's residence located at 3227 Louisa Street.  New Orleans Police Officer Leflore James Young, along with his partner, traveled to the Louisa Street residence where they saw Landry walk outside onto the front porch.  The officers approached Landry, patted him down, handcuffed him and read him his *Miranda* rights.  Landry indicated that he understood his rights and admitted that he had been in the stolen vehicle near the St. Thomas Housing Project, but denied any involvement in the robbery of the vehicle.

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in State court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference unless they were "contrary to,

---

[11]*See* State rec., vol. 1 of 1, trial transcript at p. 56.

[12]*See* State rec., vol. 1 of 1, trial transcript at p. 56, lines 25-28.

or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039, 121 S.Ct. 2001, 149 L.Ed.2d 1004 (2001). The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *Hill*, 210 F.3d at 485. Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it `was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485, *quoting* 28 U.S.C.§ 2254(d)(2).

## IV.  ANALYSIS

### A.  Ineffective Assistance for Failure to Object to Leading Questions and Hearsay Testimony and Failure to Effectively Cross-Examine Witnesses

Landry argues that counsel was ineffective due to the following:  1) His failure to object to leading questions posed by the prosecution to witnesses, Officer Gregory Powell and Officer James Young; 2) his failure to object to hearsay testimony offered by Officers Powell and Young; and, 3) his failure to effectively cross-examine witnesses, Gregory Powell and Zeisha Thomas.  Petitioner raised these same claims in connection with his state direct appeal.

6

In addressing these arguments, the Louisiana Fourth Circuit Court of Appeal first set forth the

applicable law.

> Ineffective assistance of counsel claims are reviewed under the two-part test of
> *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
> (1984). *State v. Brooks*, 94-2438, p. 6 (La. 10/16/95), 661 So.2d 1333, 1337
> (on rehearing); *State v. Robinson*, 98-1606, p. 10 (La. App. 4 Cir. 8/11/99), 744
> So.2d 119, 126. In order to prevail, the defendant must show both that: (1)
> counsel's performance was deficient; and (2) he was prejudiced by the
> deficiency. *Brooks*; *supra*; *State v. Jackson*, 97-2220, p. 8 (La. App. 4 Cir.
> 5/12/99), 733 So.2d 736, 741. Counsel's performance is ineffective when it is
> shown that he made errors so serious that counsel was not functioning as the
> "counsel" guaranteed by the Sixth Amendment. *Strickland* at 686, 104 S.Ct.
> at 2064; *State v. Ash*, p. 9 (La. App. 4 Cir. 2/10/99), 729 So.2d 664, 669.
> Counsel's deficient performance will have prejudiced the defendant if he shows
> that the errors were so serious as to deprive him of a fair trial. To carry his
> burden, the defendant must show that there is a reasonable probability that, but
> for counsel's deficient performance the result of the proceeding would have
> been different: "[a] reasonable probability is a probability sufficient to
> undermine confidence in the outcome." *Strickland* at 693, 104 S.Ct. at 2068;
> *State v. Guy*, 97-1387, p. 7 (La. App. 4 Cir. 5/19/99), 737 So.2d 231, 236.
>
> This court has previously recognized that if an alleged error falls "within
> the ambit of trial strategy" it does not "establish ineffective assistance of
> counsel." *State v. Bordes*, 98-0086, p. 8 (La. App. 4 Cir. 6/16/99), 738 So.2d
> 143, 147, quoting *State v. Bienemy*, 483 So.2d 1105, 1107 (La. App. 4 Cir.
> 1986). Moreover, as "opinions may differ on the advisability of a tactic,
> hindsight is not the proper perspective for judging the competence of counsel's
> trial decisions. Neither may an attorney's level of representation be determined
> by whether a particular strategy is successful." *Id.*, quoting *State v. Brooks*,
> 505 So.2d 714, 724 (La. 1987).[13]

In addressing Landry's claims regarding counsel's alleged ineffectiveness in

connection with the testimony of Officer Powell, specifically, counsel's failure to object to

---

[13]*See Landry*, No. 2001-KA-0535 at pp. 4-5.

the leading questions posed to Powell, the Louisiana Fourth Circuit Court of Appeal examined the testimony at issue:

> The prosecutor's third question posed to the State's first witness, Det. Powell, was leading. Det. Powell testified that he was assigned to the Seventh District, and the prosecutor asked if that was New Orleans East, to which the detective responded in the affirmative. When Det. Powell later answered in the affirmative to the question of whether he had investigated an armed robbery on May 8 of that year, the prosecutor asked if the armed robbery took place at the Church's Chicken on Dowman and Morrison Roads.[14]

The court then reasoned:

> These are examples of the innocuous leading questions posed by the prosecutor throughout the trial that drew no objections from defense counsel. Most of the prosecutor's leading questions were of this variety. Had objections been raised, the prosecutor undoubtedly would have simply rephrased his questions, and elicited the same testimony. Counsel could have justifiably felt that it was not worth displaying a hypercritical attitude in front  of the jury as to these questions for fear of alienating them, or of giving the impression that he was seeking to suppress the truth. This constitutes a valid defense strategy and does not support a claim of ineffective assistance of counsel. Even assuming some lapse on the part of defense counsel in failing to lodge objections, considering the strength of the State's case against defendant, he has failed to show that there is a reasonable probability that, but for any deficient performance by counsel in this regard, the result of the proceeding would have been different.[15]

With respect to Landry's claim regarding the hearsay testimony of Officer Powell, the Louisiana Fourth Circuit Court of Appeal reasoned:

> After Det. Powell testified that Ms. Thomas identified a photograph of the person who robbed her, the prosecutor asked if she had said that she knew him. The detective responded in the affirmative. Defense counsel could have made

---

[14]*See Landry*, No. 2001-KA-0535 at p. 5.

[15]*See Landry*, No. 2001-KA-0535 at pp. 5-6.

a tactical decision not to object to this question by the prosecutor, knowing that Ms. Thomas would later testify that she knew defendant.  Det. Powell also testified that Ms. Jackson telephoned him and related the information about following defendant while he was driving the stolen car.  However, both Ms. Jackson and Ms. Thomas testified to these facts in detail.  Similarly, although Det. Powell testified that Ms. Thomas told him that the person who robbed her was her sister-in-law's boyfriend, Ms. Thomas also testified to that fact. Defense counsel, knowing that this information was going to come to light through other witnesses, could have refrained from objecting so as not to make it appear like he was attempting to suppress the truth.

Later, Det. Powell was asked what he found in the Louisa Street residence, and the detective responded that he found the gun and some clothes that defendant's girlfriend said defendant had worn on the date of the robbery. Defense counsel could have made a tactical decision not to object to this hearsay evidence and call attention to it, knowing that the clothing was not an issue.  Det. Powell never said that either Ms. Thomas or Ms. Jackson described the clothing worn by the robber, and neither woman identified the clothing at trial.[16]

The state appellate court next addressed Landry's claim regarding the hearsay

testimony of Officer Young, reasoning:

The prosecutor asked the officer if the female at the Louisa Street residence had denied knowledge of the gun, and the officer responded in the affirmative.  The prosecutor then asked, "She denied knowledge?"  Det. Powell again responded in the affirmative.  Even assuming defense counsel should have objected to one or both of these questions, considering the strength of the State's case, defendant has failed to show that there is a reasonable probability that, but for any deficient performance by counsel in this regard, the result of the proceeding would have been different.[17]

Finally, with respect to counsel's alleged ineffective cross-examination of Powell and

Thomas, the Louisiana Fourth Circuit stated:

---

[16]*See Landry*, No. 2001-KA-0535 at pp. 6-7.

[17]*See Landry*, No. 2001-KA-0535 at p. 7.

Defendant next contends that counsel demonstrated his lack of preparation by asking two questions of Det. Powell and one of Ms. Thomas that drew cautionary objections by the prosecutor.  The prosecutor feared that the answers might include references to the fact that at one time defendant had been wanted on a number of armed robberies, that the gun found at his girlfriend's residence was stolen, and that he was of bad character.  However, defense counsel rephrased his questions, and no objectionable evidence was elicited.  In fact, Det. Powell answered one question by stating that it was determined that the handgun did not belong to defendant; this testimony may have actually benefited [sic] the defendant.  Regardless of defense counsel's skill or lack thereof in this respect, defendant suffered no prejudice.[18]

This court finds that the above reasoning does not represent an unreasonable application of the "governing legal principle", enunciated by the Supreme Court in *Strickland*, *supra*, to the facts of this case.  Accordingly, the instant claim for federal habeas corpus relief is without merit.  *See Williams*, 529 U.S. at 413, 120 S.Ct. at 1523.

**B.  Excessive Sentence**

Landry was originally sentenced to 99 years incarceration.[19]  However, after being adjudicated to be a third felony offender based upon his two prior convictions, one in 1994 for possession of stolen property, and one in 1997 for armed robbery, Landry's original sentence was vacated and he was sentenced to life imprisonment.[20]  Landry asserts that the life sentence he received is unconstitutionally excessive.

---

[18]*See Landry*, 2001-KA-0535 at p. 6.

[19]*See* State rec., vol. 1 of 1, Sentencing and Multiple Bill Hearing Transcript at p. 6.

[20]*See* State rec., vol. 1 of 1, Sentencing and Multiple Bill Hearing Transcript at pp. 9, 12-13, and 17-18.

Generally, if a sentence is within the statutory limits, a federal habeas court will not upset the terms of that sentence unless it is so disproportionate to the offense as to be completely arbitrary and shocking.  *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975); *see also Smallwood v. Johnson*, 73 F.3d 1343, 1347 (5th Cir.), *cert. denied*, 519 U.S. 883, 117 S.Ct. 212, 136 L.Ed.2d 146 (1996) (emphasizing that a federal court will not review a state sentencing without a threshold showing that the sentence is "grossly disproportionate to the offense").  In this case, Landry's life sentence was within statutory limits.  Landry was sentenced pursuant the provisions of LSA-R.S. 15:529.1(A)(1)(b)(ii) which provided, in pertinent part, at the time Landry committed the armed robbery at issue and at the time he was convicted and sentenced, for the imposition of a mandatory life sentence if "the third felony conviction or either of the two prior felonies is a felony defined as a crime of violence...."  Because the instant armed robbery conviction and Landry's prior, 1997 armed robbery conviction were "crime[s] of violence", Landry clearly fell under the scope of § 529.1(A)(1)(b)(ii).[21]

---

[21]Landry suggests that this court should consider, in adjudicating his excessive sentence claim, the fact that the Louisiana legislature, in June 2001, amended § 529.1(A)(1)(b)(ii) to provide for a mandatory life sentence "[i]f the third felony **and the two prior felonies** are felonies defined as a crime of violence... [emphasis added.]"  *See* Federal rec., doc. 1, Landry's memorandum at p. 14. However, the state legislature, in passing the above amendment, clearly provided that said amendment "shall only have prospective effect."  Accordingly, the fact that § 529.1(A)(1)(b)(ii), as it was amended in 2001, would not be applicable to Landry, does not provide a basis upon which to find that the life sentence he received, which was in accordance with applicable law, was excessive.

Landry argues that even though his life sentence was within statutory guidelines, it was nevertheless excessive because "no one was injured", and the vehicle stolen at gunpoint was "recovered in good condition".[22]  In addressing this claim in connection with Landry's direct appeal, the Louisiana Fourth Circuit Court of Appeal first examined applicable law.

> Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime.  *State v. Johnson*, 97-1906, pp. 6-7 (La. 3/4/98), 709 So.2d 672, 677; *State v. Dorthey*, 623 So.2d 1276, 1280-81 (La. 1993).  However, the entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional.  *Johnson*, 97-1906 at pp. 5-6, 709 So.2d at  675; *see also State v. Young*, 94-1636, p. 5 (La. App. 4 Cir. 10/26/95), 663 So.2d 525, 527.  There must be substantial evidence to rebut the presumption of constitutionality.  *State v. Francis*, 96-2389, p. 7 (La. App. 4 Cir. 4/15/98), 715 So.2d 457, 461.  A court may only depart from the minimum sentence if it finds by clear and convincing evidence that would rebut the presumption of constitutionality.  *State v. Lindsey*, 99-3256, p. 5 (La. 10/17/00), 770 So.2d 339, 343.  To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly show that he is exceptional, which in this context means that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.  *Id.*; *Johnson*, 97-1906 at p. 8, 709 So.2d at 677.[23]

---

[22]*See* Federal rec., doc. no. 1, Landry's supporting memorandum at p. 13.

[23]*See Landry*, 2001-KA- 0535 at pp. 8-9.

With the above law in mind, the state appellate court then examined the circumstances pursuant to which the trial court sentenced Landry as a third felony offender to life imprisonment.

> Defendant was convicted of armed robbery and adjudicated a third-felony habitual offender.  He was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence pursuant to La. R.S. 15:529.1(A)(1)(b)(ii), which provides:
>
> > If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation or suspension of sentence.
>
> In addition to the instant armed robbery conviction, one of defendant's two other felonies was a July 1997 conviction for armed robbery.  Armed robbery is defined as a crime of violence under La. R.S. 14:2(13).  Thus, two of defendant's three felonies were serious crimes of violence.  His third habitual offender felony was a March 1994 conviction for possession of a stolen automobile valued at over five hundred dollars.  The trial court cited these convictions in originally sentencing defendant, noting that defendant [had] been sentenced to five years in prison on the armed robbery conviction in July 1997.  The instant offense occurred in May 2000.  The court noted that defendant, who was twenty-four years old at the time of sentencing, had a total of thirteen felony arrests, with the two prior convictions, and ten misdemeanor arrests with no convictions.  The court noted the defendant's former employment at Piccadilly Cafeteria, but also observed that he was listed as unemployed at the time of his arrest in the instant case.  After considering the aggravating and mitigating circumstances, as well as the facts of the case, the trial court found there was an undue risk that defendant would commit another crime during a period of suspended sentence, probation or parole.  It deemed defendant to be in need of a correctional treatment that could be best provided by commitment to the penitentiary.  The court concluded that any lesser

sentence than the one it imposed would deprecate the seriousness of defendant's crime, especially in light of his 1997 conviction for armed robbery. The court observed that the instant crime was ... one of violence, committed with a handgun, involving the use or threatened use of physical force against a person under circumstances giving rise to a substantial risk that such force might have been used. The trial court then sentenced defendant to the maximum sentence for armed robbery, ninety-nine years at hard labor, without benefit of parole, probation or suspension of sentence.[24]

Thereafter, the Louisiana Fourth Circuit specifically addressed, and ultimately rejected, the basis of Landry's excessiveness claim, that the trial court should have made a downward departure from the statutorily-mandated minimum sentence of life imprisonment since "no one was injured, and the stolen car was recovered in good condition."[25]

He suggests that these factors were not considered by the trial court. However, the trial court specifically stated that it considered the facts of the case in originally sentencing defendant, and reiterated those reasons in sentencing him as a habitual offender. Defendant has failed to rebut the presumption that the mandatory minimum sentence [of life imprisonment] is constitutional, as he has not clearly shown that he is exceptional, i.e., that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to his culpability, the gravity of his offense, and the circumstances of his case. This assignment of error is without merit.[26]

This court finds that the above-reasoning does not constitute an unreasonable application of pertinent Supreme Court law to the facts of this case. *See Williams*, *supra*.

---

[24]*See Landry*, 2001-KA-0535 at pp. 9-10.

[25]*See Landry*, 2001-KA-0535 at p. 10.

[26]*See Landry*, 2001-KA-0535 at p. 10.

Accordingly, Landry's claim for habeas relief based upon the alleged excessiveness of his sentence is without merit.

### C.  Improper Reference to Criminal History

Landry contends that his due process right to a fair trial was violated by and he received ineffective assistance of counsel in connection with a side bar which was prompted when defense counsel asked Detective Powell how he obtained an address for Landry for purposes of obtaining a search warrant.  Before Detective Powell could respond, the trial court called for a side bar.[27]  At this side bar, the following colloquy ensued:

> THE COURT:
> Does the defendant have any felony convictions?
>
> MR. GREENSTONE (the prosecutor):
> Oh, yes.
>
> THE COURT:
> Okay, I'm afraid that the response to this, although I don't know, is going to be that he ran him [Landry] in motions or in NCIC, and that his address came up in connection with other crimes for which he's not on trial. And that's what he's trying to tell us.
>
> MR. GREENSTONE:
> And my concern also, if we can fix this, he [Landry] was originally - - he was wanted for a bunch of armed robberies.  If you ask this question, the Judge is right.  Please tailor it.  I don't want another mistrial.
>
> THE COURT:
> I really don't.  And at this point - - I mean listen, Don [defense counsel]. I cannot curtail your cross-examination.  I cannot restrict your cross-

_____

[27]*See* State rec., vol. 1 of 1, trial transcript at p. 19, lines 17-32; p. 20, lines 1-14.

examination.  And if you want him to start talking about other crimes evidence, that's a decision you have to make.

MR. DONNELLY [defense counsel]:
    Okay.

THE COURT:
    I didn't bring you over here to tell you what you could not ask.  I want to be careful that we go with our eyes open and I'm not put in a position where I have to declare a mistrial.

MR. DONNELLY:
    Okay.[28]

According to Landry, the above conversation in the side bar "got loud" and jurors overheard the trial judge and prosecutor say that he was a convicted felon and had outstanding arrest warrants for unrelated robberies and, as a result, automatically thought he was guilty of the armed robbery for which he was standing trial.[29]  Further, Landry contends that his counsel was unconstitutionally ineffective for failing to object to these improper comments by the trial judge and the prosecutor which jurors allegedly overheard.[30]

A review of the trial transcript reflects that no evidence regarding Landry's prior convictions or bad acts was elicited in connection with Detective Powell's testimony or the testimony of any other witness.  Further, review of the trial transcript reveals no evidence, nor does Landry offer any evidence, that any portion of the side bar conversation was overheard

---

[28]*See* State rec., vol. 1 of 1, trial transcript at p. 20, lines 15-32; p. 21, lines 1-19.

[29]*See* Federal rec., doc. 1, Landry's memorandum at pp. 21-22.

[30]*See* Federal rec., doc. 1, Landry's memorandum at pp. 23-24.

by jurors.  Accordingly, Landry suffered no due process violation by virtue of the comments made during the side bar nor was defense counsel ineffective for failing to object to the private discussion between the court and counsel during the side bar.

### D.  Insufficient Evidence to Support Multiple Offender Adjudication

Landry attacks his multiple offender adjudication, arguing "that the State failed to prove beyond a reasonable doubt that he had been properly Boykinized, represented by counsel, and that his alleged prior guilty pleas in Case No. 390-045 "L" on July 17, 1997 and Case No. 369-063 "F" on March 29, 1994, were knowing and voluntarily entered into." Landry further asserts that "[t]he trial court based its adjudication of petitioner as [a] third felony offender only on the matching fingerprints from arrest registers, bills of information, and the testimony by the State's expert witness, New Orleans Police Officer Raymond Loosemore."[31]   According to Landry, such evidence was insufficient for purposes of adjudicating him a third felony offender because it only showed "that he had been arrested twice", before his November 16, 2000 armed robbery conviction, rather than showing, as required under Louisiana law, that he was the person convicted of these offenses.[32]

There are a number of problems with the above-described attack on his multiple offender adjudication.  First, whether or not the trial court was in violation of state law in adjudicating Landry to be a third felony offender is irrelevant for the purpose of attaining

---

[31]*See* Federal rec., doc. 1, Landry's memorandum at p. 28.

[32]*See* Federal rec., doc. 1, Landry's memorandum at p. 29.

habeas corpus relief.   Federal habeas review is limited to questions of constitutional dimension.   *See generally Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992), *cert. denied*, 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); *Castillo v. Johnson*, 141 F.3d 218, 222 and 224 (5th Cir.), *cert. denied*, 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998).   Second, an affirmative determination of multiple offender status based upon fingerprints from earlier arrest registers is not violative of state law.   *See State v. Bazile*, 762 So.2d 106, 109 (La. App. 4 Cir. 2000), *writ. denied*, 794 So.2d 779 (La. 2001).

Additionally, the Supreme Court has made clear that generally, "federal postconviction relief is [not] available when a prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody." *Lackawanna County District Attorney v. Coss*, 532 U.S. 394, 121 S.Ct. 1567, 1570, 149 L.Ed.2d 608 (2001).   The Court held:

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid....   If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

*Id.*, 532 U.S. at 403-404, 121 S.Ct. at 1574.[33]

---

[33] There are two exceptions to the above general rule.   One exception is with respect to habeas petitions challenging an enhanced sentence "on the basis that the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment...." *Id.*   The second exception might lie, albeit in a rare circumstance, where through no fault of his own, there was no channel of review actually available to petitioner through which

Finally, in connection with his assertion that his multiple offender adjudication was constitutionally deficient, Landry asserts that his counsel was ineffective for failing to raise objections to the deficient multiple offender proceeding.  Landry contends that he "was essentially without counsel at the multiple offender hearing as defense counsel did not contest anything" and that "defense counsel had nothing to lose by contesting the State's evidence at the multi-bill hearing."[34]

Landry's only basis for counsel lodging an objection in connection with his multiple offender adjudication is his contention that the State's evidence was insufficient in that it only proved that he had two prior arrests, rather than two prior convictions.  As shown above, Landry's contention in this regard is without merit.[35]  As such, Landry suffered no prejudice as a result of counsel's alleged deficiency and, therefore, Landry has failed to meet his burden of proof under *Strickland*, *supra*.  Accordingly, his ineffectiveness claim is without merit.

### E.  Ineffective Assistance of Counsel Due to Counsel's Utilization of "Standardized Forms" in Preparing Pre-Trial Motions

Landry complains that while defense counsel "filed a total of 14 defense motions", "[t]he problem with the majority of the motions" is that they were filed on "some sort of standardized form, indistinct from [each] other".  Landry describes the motions as being

---

he might have timely challenged his prior conviction.  *Id.*, 532 U.S. at 405-406, 121 S.Ct. at 1575. Neither of these exceptions are applicable in the instant situation.

[34]*See* Federal rec., doc. 1, Landry's memorandum at p. 32.

[35]*See* discussion *supra* at p. 18.

"practically obsolete, having all the form but no substance", and being "perfunctory in nature".[36]   Landry, however, with the exception of counsel's motion to suppress evidence, provides no specifics as to what information and/or arguments these motions should have contained.  As such, Landry has clearly failed to satisfy his burden of proof, under *Strickland*, *supra*, to show how the motions were deficient and how he was prejudiced by these deficiencies.

With respect to counsel's motion to suppress evidence, Landry contends that said motion should have included a challenge based upon the fact that evidence outside the scope of the search warrant was seized.  Specifically, Landry complains that the search warrant only authorized a search for and seizure of a chrome handgun and a set of keys.[37]   However, taken from the Louisa Street residence which was the subject of the pertinent search warrant was not only a chrome handgun, but also a shirt which Landry was allegedly wearing on the day of the robbery and photographs depicting Landry with friends.[38]   Landry contends that the taking of these items constituted a violation of his Fourth Amendment protection against an unreasonable search and seizure and that he was prejudiced due to counsel's failure to urge this argument in the motion to suppress he filed on Landry's behalf.

---

[36]*See* Federal rec., doc. 1, Landry's memorandum at pp.  34-35 and 36.

[37]A copy of the pertinent search warrant is contained in the State rec., supplemental vol. 2.

[38]A copy of the "Return on Search Warrant" listing the items seized is contained in the State rec., supplemental vol. 2.

As the Fifth Circuit explained in *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983), "[g]enerally, only items described in a search warrant may be seized."  However, an exception to this general rule exists "where a police officer has a warrant to search a given area for specified objects and in the course of the search comes across some other article of incriminatory character.  The property is then seizable."  *Id.*  Another exception arises when the seized property "has a sufficient nexus to the crime being investigated".  *Id.*, *citing United States v. Kane,* 450 F.2d 77 (5th Cir.1971), *United States v. Bills,* 555 F.2d 1250, 1251 (5th Cir.1977), and *United States v. Davis,* 589 F.2d 904 (5th Cir.1979).

In the instant case, the seized photographs, linking Landry to the residence where a gun fitting the description of the gun used in the pertinent armed robbery was discovered, and the seized shirt, which Landry was allegedly wearing on the date of the robbery, are articles with a sufficient nexus to the crime which was being investigated.  As such, they fall under the above-described exception to the general rule limiting seizure to the specific items listed in the search warrant.  Accordingly, had counsel included in his motion to suppress a specific argument alleging that the clothing and photographs were unlawfully seized, said argument would have been unsuccessful.  Therefore, Landry suffered no prejudice due to counsel's alleged deficiency in failing to raise such an argument.  Accordingly, his ineffectiveness claim is without merit.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Jermaine Landry, be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this __23rd__ day of _____October_____, 2007.


LOUIS MOORE, JR.

United States Magistrate Judge

22